UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
ASHLAND

**CIVIL ACTION NO. 05-149-DLB**

**AL PERRY ENTERPRISES, INC.**                                                              **PLAINTIFF**

vs.                              **MEMORANDUM OPINION & ORDER**

**APPALACHIAN FUELS, LLC**                                                              **DEFENDANT**

***************************

## I.  INTRODUCTION

This non-core bankruptcy proceeding is before the Court upon Plaintiff's Objections (Doc. # 23) to the Recommended Findings of Fact, Conclusions of Law and Judgment ("FOF/COL") (Doc. # 22) rendered by the Honorable William S. Howard, Bankruptcy Judge, upon the parties' cross-motions for summary judgment.[1]  Defendant has filed a Response and Reply to Plaintiff's objections (Doc. # 24), and Plaintiff subsequently filed both a Reply (Doc. # 25) as well as a Request for Entry of Final Order and Judgment (Doc. # 28), which includes proposed findings of fact and conclusions of law.  Therefore, Plaintiff's objections to the FOF/COL are now ripe for this Court's review.

---

[1] When this action was originally transferred to the Eastern District of Kentucky, the case was referred to the Bankruptcy Judge.  While before the Bankruptcy Judge, the matter was given a temporary case number under which all filings were docketed.  As such, the parties' cross-motions for summary judgment (Bank. Docs. # 4-5, 7-8) and related filings are designated under Bankruptcy Court case number 0:06-1009-WSH.  Because there are three related matters here, references to case docket numbers will be designated as follows: the current action, 06-149-DLB (Doc. #___); the non-core summary judgment proceedings before Judge Howard, 06-1009-WSH (Bank. Doc. #___); and, the core bankruptcy proceedings, 02-14261-WSH (Core Bank. Doc. #___).

## II. FACTUAL AND PROCEDURAL BACKGROUND

The Court hereby incorporates the "Findings of Facts" from Judge Howard's FOF/COL. Although the material facts appear to be undisputed, Plaintiff does make two "factual" objections to the findings in the FOF/COL. However, these objections are effectively identical in substance to the "Conclusions of Law" objections and, therefore, do not truly represent factual disputes, but rather, differences of interpretation. Nevertheless, where there are facts in dispute, the Court adopts Judge Howard's findings for the reasons set forth herein. For ease of reference, a summary of these facts is set forth below.

In 1994, Plaintiff entered into an agreement with Bowie Resources ("Bowie") to act as a sales agent for Bowie. As sales agent, Plaintiff would attempt to secure coal supply contracts for Bowie and would receive commissions based thereon. One such supply contract, with the Tennessee Valley Authority ("TVA contract"), resulted in a dispute between Plaintiff and Bowie regarding the agreement to pay commissions. An action was filed by Plaintiff in the United States District Court for the Southern District of Indiana, which ultimately resulted in an Agreed Judgment dated March 6, 2002, wherein Bowie agreed to assume continuing commission obligations, which included payments to Plaintiff under the TVA contract. The Agreed Judgment also required that, "should [Bowie] go through bankruptcy proceedings, [Bowie] agrees to assume [its] contractual obligations" as set forth under the Agreed Judgment.

In November of 2002, only months after the Agreed Judgment, Bowie entered into bankruptcy proceedings. During the initial stages of the bankruptcy, Bowie acted as a debtor in possession and continued paying Plaintiff commissions under the TVA contract. Almost a year later, the Bankruptcy Court established auction procedures for the sale of

Bowie's assets, which included sale of the TVA contract. The sale was contracted for via an Asset Purchase Agreement ("APA") with JJM Energy ("JJM"). Bowie also filed a Supplemental Statement of Cure Amounts, which acted to bring certain liabilities connected to the assets up to date. The stated cure amount for the TVA contract was $0. On October 24, 2003, Plaintiff filed an objection to the cure amount, arguing that it was entitled to past and future commissions from Bowie under the Agreed Judgment. Upon the unsuccessful sale of Bowie's assets to JJM, Plaintiff's objection was mooted.

In December of 2003, a new sale was proposed between the debtor Bowie and Defendant. Although the APA for this second sale attempt was effectively identical to the first, the Bankruptcy Court, in its final Sale Order ("Sale Order"), authorized the sale of the assets, including the TVA contract, "free and clear of all liens, claims and encumbrances." Upon notice by Bowie to all concerned parties that the coal supply contracts were to be assumed and assigned to Defendant, and absent any renewed objection from Plaintiff, the sale was consummated.

In 2005, Plaintiff filed the current action against Defendant for breach of contract, claiming that Defendant voluntary assumed the commission obligations previously owed by Bowie to Plaintiff in connection with the TVA contract.

### III.   ANALYSIS

**A.   Standard of Review**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

The court must "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the non-moving party." *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 361 (6th Cir. 2001). Both parties have not heretofore asserted that there is a genuine issue of fact for trial and, therefore, summary adjudication is appropriate as a matter of law.

Pursuant to 28 U.S.C. § 157(c)(1), which directs that a bankruptcy judge "may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11," this matter was referred to Bankruptcy Judge Howard for the submission of proposed findings of fact and conclusions of law based on the parties' cross-motions for summary judgment. Before entering a final order and judgment, this Court now considers Judge Howard's FOF/COL and reviews *de novo* "those matters to which any party has timely and specifically objected." 28 U.S.C. § 157(c)(1). Defendant has not filed any objections. Plaintiff has filed five timely and specific objections, which the Court now considers *de novo*.

**B.    Objections to the FOF/COL**

    **1.    "Free and Clear"**

In its first and third objections, Plaintiff asserts that the FOF/COL incorrectly concludes that the December 2, 2003 Bankruptcy Court-approved sale consummated the transfer of the TVA contract from the debtor-in-possession Bowie to Defendant "free and clear of all liens, claims, and encumbrances." Because the FOF/COL recommends that Plaintiff's failure to object during the bankruptcy proceeding is the dispositive issue in this case, Judge Howard did not address the merits of Plaintiff's "free and clear" argument. Although the Court's merit analysis does not necessitate a finding as to the "free and clear" language of the Sale Order, it is nevertheless important to understand why – at least for

purposes of establishing a need to object – the commission obligations were not voluntary assumed by Defendant via the relevant contractual language found in the APA and Sale Order.

As acknowledged in the FOF/COL, Plaintiff actually concedes that debtor Bowie did not assume the commission obligation and therefore could not have assigned the obligation to Defendant via the APA. Instead, Plaintiff submits this case is a simple matter of contract interpretation, suggesting that even though the debtor Bowie never assumed or assigned the commission obligation, Defendant nevertheless voluntarily assumed the obligation by way of the contractual language utilized in the APA, which was approved by the Sale Order. In support of this proposition, Plaintiff cites primarily and almost exclusively to two provisions, namely a caveat provision in the Sale Order's "free and clear" section and the assumption of liabilities section of the APA.

Without having to breakdown the interplay of the APA and Sale Order language, which has been briefed *ad nauseam* and sufficiently addressed within the FOF/COL, it is sufficient to paraphrase the effect of the relevant language. Looking first to the Sale Order, which was subsequent to and approved the APA, the Bankruptcy Court authorized, pursuant to 11 U.S.C. § 363(f), the sale of the TVA contract "free and clear of any and all liens, claims, interests, and encumbrances, including...any demands or claims of creditors of, or claimants against, Bowie...." (Core Bank. Doc. # 2244, p. 4); *see also Car-Tec, Inc. v. Venture Indus., Inc. (In re AutoStyle Plastics, Inc.)*, 227 B.R. 797, 800 (Bankr. W.D. Mich. 1998) ("Bankruptcy courts have the power to approve sales of assets free and clear of any interest that could be brought against the bankruptcy estate during bankruptcy, either through 11 U.S.C. § 363(f) or the bankruptcy court's equitable powers."). However, despite

this strong language that generally "bars successor liability claims," the Sale Order contained an exception for "Permitted Liens," referencing the APA for these liens. *Id*.

Looking now to the APA, the important category of "Permitted Liens" for present purposes are the "Assumed Liabilities" found in Section 2.3(a)(1). Plaintiff relies on this section exclusively in support of its claim of voluntary assumption. Therefore, unless the language of Section 2.3(a)(1) dictates an explicit assumption of the commission obligation by Defendant, Plaintiff's claim must succumb to the "free and clear" language of the Sale Order. The explicit language, however, does no such thing. More particularly, Section 2.3(a)(1) of the APA reads, in pertinent part: "At closing the buyer will assume . . . all liabilities for and obligations of the Seller relating to the Purchased Assets or the Business arising after the closing date, including all Liabilities and obligations rising in connection with the [TVA Contract]...."  (Core Bank. Doc. # 2103, p. 10).

Plaintiff's sole claim is that the commission obligation was voluntarily assumed by Defendant because the obligation was "related to" and arose "in connection with" the TVA contract. Although the commissions themselves were certainly connected to the TVA contract, because they depended on the performance of the contract, the language of the APA does not refer to outside contracts. In other words, the "obligations rising in connection with" language is merely referencing all obligations that are a part of the TVA contract itself, of which the commission agreement was not included. The commission agreement between Plaintiff and Bowie was a contract entirely independent of the TVA contract. Simply because one contract depends on another does not mean the two are so interrelated as to incorporate one another within the bankruptcy process, especially where the contracts were between different parties and involve completely unique subject matters

and terms. Plaintiff's proposed reading of the APA's language is overbroad and untenable.

Furthermore, there is no indication that the commission obligation was ever factored into the consideration for the sale of the TVA contract. Plaintiff claims, however, that Defendant was aware that Plaintiff was willing to "vigorously" defend its right to the allegedly ongoing commission obligation and, therefore, by voluntarily assuming the obligation, Defendant avoided litigation over the matter. In other words, Plaintiff is suggesting that the consideration for Defendant's alleged voluntary assumption was avoiding the resources expended during litigation, which is of course not uncommon because avoiding the expense of additional litigation often forms the foundation for most settlement efforts.

Moreover, because the only change in the status quo during the bankruptcy proceedings from the first proposed sale of the TVA contract to the second successful sale was Plaintiff's objection to the first and lack of objection to the second, it is difficult to believe that Plaintiff was under any sort of misapprehension with respect to the second sale when the terms were unchanged. Similarly, if Defendant did indeed voluntarily assume the commission obligation under Plaintiff's reasoning, it would presumably follow that the language of the APA would be altered accordingly. However, this is not the case. To the contrary, the terms remained identical from the first proposed sale to which Plaintiff initially objected.

Even though the commissions were based on sales or deliveries made pursuant to the TVA contract, the commission arrangement between Plaintiff and debtor Bowie was entirely independent, for purposes of assumption of liabilities, from the TVA contract. Plaintiff acknowledges repeatedly that Bowie did not assume and assign the commission

obligation to Defendant as a debtor in possession.  In the absence of any language to the contrary, despite Plaintiff's contention that "explicit" language is present, there is simply no logical or business-related reasoning to support the assertion that Defendant must have then voluntarily assumed the obligation to pay Plaintiff commissions on the TVA contract.

### 2. Failure to Object

Plaintiff's second and fourth objections pertain to the FOF/COL's recommendation that Plaintiff's failure to object or otherwise bring forth its claim during the underlying bankruptcy proceedings and prior to the sale of the TVA contract to Defendant now prevents Plaintiff from collaterally attacking the terms of the contract sale from the bankruptcy estate to Defendant.  More specifically, Plaintiff asserts that it did not believe an objection was necessary because the terms of the contract sale explicitly dictated the voluntary assumption of commission obligations by Defendant.  As outlined herein, Plaintiff's interpretation as to the scope of the APA and Sale Order, and its effect on the commission obligation originally owed to Plaintiff by debtor Bowie, is without merit.  Despite its claim otherwise, Plaintiff should have known, and seemingly did know, that its interests were not protected by the sale of the TVA contract to Defendant.  Accordingly, Plaintiff's failure to object at the time of sale is fatal.

In fact, as Plaintiff effectively concedes, this is not even a case where there is a failure to protect a creditory interest because such an interest was never consideration for the sale.  Also, the non-executory commission obligation was an independent contract between Plaintiff and Bowie, which was not an underlying obligation of the TVA contract. Rather, Plaintiff argues that Defendant voluntarily assumed the commission obligations by way of the chosen language in the ASA and Sale Order, which allowed for the assumption

of liabilities "relating to" and "arising in connection with" the TVA contract. To sustain this construction of the sale terms and the overall transaction during the bankruptcy proceedings, however, would not only act to force an obligation upon Defendant that it never intended to assume, but would also circumvent established bankruptcy procedure requiring an unsecured creditor to object or otherwise bring forth a claim where it desires to invoke a creditory right or make a demand upon the bankruptcy estate.

It is well-settled that where, as here, a contractual obligation is alleged between a purchaser from a bankruptcy estate and a third-party creditor/obligee, and this allegedly transferred obligation would not exist post-bankruptcy *but for* the sale consummated by order during bankruptcy proceedings, the claim is considered a pre-petition obligation that must be "brought forward during the bankruptcy." *AutoStyle*, 227 B.R. at 800; *see also In re White Motor Credit Corp.*, 75 B.R. 944 (Bankr. N. D. Ohio 1987) (successor liability precluded where claim arose before the debtor filed bankruptcy and creditor could have filed a claim against the estate or objected during the bankruptcy proceedings). As explained by the court in *AutoStyle*, all pre-petition obligations should be brought against the bankruptcy estate during the underlying proceedings:

> All of the creditors in [the relevant case law] had filed or should have filed their claims against the asset seller, the predecessor, in the bankruptcy court. In fact, [Plaintiff] did file a proof of claim for commissions earned on work it had done for sales consummated by [debtor] before the bankruptcy. [Plaintiff] could have filed a claim for work it performed but for which sales had not yet been consummated as of the date of bankruptcy. While perhaps difficult to ascertain, Section 101(5)(A)'s definition of 'claim' includes amounts liquidated and unliquidated, fixed and contingent, matured and unmatured.

227 B.R. at 800. In other words, if Plaintiff wished to object to the sale of the TVA contract free of the commission obligation, or otherwise bring forth a claim for prospective

commissions upon sale of the contract, it had the notice and opportunity to do so. Plaintiff's failure in this regard now prevents a collateral attack on the bankruptcy sale, which was consummated "free and clear" of unspecified creditory obligations.

Regardless of whether Plaintiff should have or was required to object at the time of sale, Plaintiff's actions with respect to the previously proposed sale tellingly demonstrate that it was aware of both the probable sale free of any commission obligations and the need to object. Plaintiff's initial response to debtor Bowie's efforts to sell substantially all of its assets through bankruptcy auction procedures was to contest such efforts on grounds that a sale could not be consummated unless Plaintiff's commission agreement with Bowie was assumed and the amounts owed to Plaintiff for unpaid commissions were "cured and adequate assurances of future performance were provided." Plaintiff elaborated on what form the "adequate assurances" could take, including "Bowie Resources' acknowledgment, or a court order clarifying, that the commission due [Plaintiff] under the TVA Contract must be assumed with the balance of the TVA Contract." (Core Bank. Doc. # 2061, p. 2). Notably, however, Section 2.3(a)(1) in the prior proposed but unsuccessful APA between Bowie and JJM, to which Plaintiff's original objection was directed, is *exactly the same* as Section 2.3(a)(1) of the APA in question between Bowie and Defendant. (*Compare* Core Bank. Doc. #1615-2, pp. 9-10, *and* Core Bank. Doc. # 2103, p. 10). Therefore, if Plaintiff believed it necessary to object to the first proposed sale, it should have similarly felt compelled to object to the second sale, but it did not.

Plaintiff cannot have it both ways. On one hand, Plaintiff argues that its initial objection to the unsuccessful sale should not be looked upon as an objection to the lack of assumption of commission obligations by the buyer because the primary subject matter

of the objection pertained to the cure amounts, that is the commissions already owed by Bowie, which were allegedly in arrears. This position is maintained by Plaintiff, despite its clear objection to the status of future commissions within its "Cure Amounts" objection, stating: "[Buyer] apparently is of the position that the TVA Contract may be assumed and assigned without paying commissions due to [Plaintiff]. *Perry objects to this*." (Core Bank. Doc. # 2061, p. 6) (emphasis added). In other words, Plaintiff asks the Court to completely ignore the explicit objections it made to the earlier sale proposed under identical sale terms because the objection was allegedly focused primarily on the cure amount controversy.[2]

On the other hand, however, and in apparent contradiction, Plaintiff suggests in its cross-motion for summary judgment that the now "explicit" terms of the successful APA are a direct result of Plaintiff's earlier objections to the unsuccessful APA. Plaintiff first states that it "was prepared to vigorously defend [its] right to receive commissions from any party deriving benefits from the TVA Contract. [It's] 'premature' objection to the previously proposed § 365 sale made this evident." (Bank. Doc. # 8, p. 8). Plaintiff inexplicably claims that this objection, which it now tries to discount and have the Court ignore, caused the

---

[2] While Plaintiff may attempt to argue that this objection was exclusive to the cure amounts owed to Plaintiff for prior commissions, the entire context within which the objection was made makes it clear that Plaintiff was objecting to the first sale on two grounds: (1) failure to cure past commissions, *and* (2) the failure to assume and assign the Agreed Judgment, which ordered future commissions to Plaintiff by Bowie with respect to the TVA contract. (Core Bank. Doc. # 2061, p.6 ("Bowie Resources apparently intends to assume and assign the TVA Contract, but there is no reference made to curing the past due commissions owed to [Plaintiff], nor does the Supplemental Statement indicate that the Agreed Judgment is to be assumed and assigned."). Plaintiff's objection to the first sale on future commission grounds is further evidenced by its argument where Plaintiff effectively asks that the debtor not be allowed to assume the TVA contract as debtor-in-possession and then assign the contract without also assuming and assigning the commission obligation: "[Plaintiff] respectfully requests this Court to enter an order directing Bowie Resources to assume the obligation to pay [Plaintiff] $0.11 per ton on coal shipped under the TVA Contract as a condition to the assumption of the TVA Contract."

next buyer (Defendant) to voluntary assume the commission obligations to avoid litigation over the matter, which Plaintiff believes constitutes consideration for the transaction.

Simply put, Plaintiff is attempting to have it both ways. Whether Plaintiff truly knew or believed it had to object to Defendant's sale, which the record strongly indicates it did, ignorance of the law is no excuse. It was unreasonable, and in fact now appears irrational in view of Plaintiff's conflicting positions, to consider the language in question as "explicitly" dictating the assumption of commission obligations by Defendant. In the end, although Plaintiff ultimately claims that it presumed its interest in the commission obligations was adequately protected by the language of the APA, Plaintiff made this assumption at its peril.

### 3. The *AutoStyle* Decision

As its final objection, Plaintiff asserts that FOF/COL's reliance on the decision in *AutoStyle* was inappropriate because Plaintiff claims the case is generally inapposite – despite the rather substantial similarities between the two cases as conceded by Plaintiff – and the reasoning inapplicable to the case at bar. *See generally AutoStyle*, 227 B.R. 797. It is clear, however, that Plaintiff's objection to the *AutoStyle* authority is premised merely upon its own interpretation of the contractual terms in the present context, even though both cases involve almost identical circumstances.

Plaintiff claims that the "critical distinction in the present case...is that the obligations owed to Perry *are* explicitly assumed by the terms of the APA" (emphasis in original). This assertion is completely erroneous and fails to illustrate a proper understanding of the term "explicit." If Defendant indeed voluntarily and *explicitly* assumed the commission obligations owed to Plaintiff by debtor Bowie, there would be no controversy in this matter. It is the very absence of explicit language that lies at the heart of this action. If the APA

had included language stating that "the buyer assumes all commission obligations previously owed by debtor as to the executory contracts," the parties would not be before this Court. Other than Plaintiff's own subjective and untenable interpretations, there is no evidence to suggest that the APA or Sale Order intended to transfer Bowie's independent commission obligation to Plaintiff, or that Defendant voluntary assumed such obligation in any way.

The *AutoStyle* court found, as recognized in the FOF/COL, that the claim for commissions was a "pre-petition obligation that should have been brought forward during the bankruptcy." *Id.* at 800. As previously discussed, Plaintiff continues to assert that it was not required to object at the time of sale or otherwise bring forth its claim because Defendant voluntarily assumed the commission obligation of the bankruptcy estate. Plaintiff's suggestion that it did not object at the time of sale because it believed that the commission obligation was assumed by Defendant under the terms of APA rings hollow when Plaintiff had previously put forth an objection entirely to the contrary when *identical* terms for a previous sale were proposed. In other words, Plaintiff cannot say it did not feel the need to object when it previously objected on the very same and "explicit" (using Plaintiff's characterization) contractual language.

The *AutoStyle* case perfectly illustrates the reasoning behind the need for creditors in Plaintiff's position to insure the protection of their interest during bankruptcy proceedings, which Plaintiff initially attempted but ultimately failed to do. As stated in the *AutoStyle* holding: "This Court cannot permit [Plaintiff] to subvert the Bankruptcy Code's order or priorities simply because it is dissatisfied with its potential distribution in the bankruptcy case. The proper bankruptcy procedure would have been to object to the [Sale Order] or

file an appeal therefrom. [Plaintiff] cannot now collaterally attack that order when it failed to exercise any of its previous rights." 227 B.R. at 801.

### IV.    CONCLUSION

Plaintiff does not assert that there are any genuine issues of material fact for trial and fails to demonstrate that Defendant has assumed or availed itself of any contractual obligation toward Plaintiff.  Alternatively, this indirect collateral attack on the underlying bankruptcy proceedings cannot be sustained where Plaintiff had the opportunity, yet failed to properly object or otherwise bring forward its claim to protect the commission obligation. Accordingly, this matter is appropriate for summary adjudication and Defendant must prevail as a matter of law.  The Court, therefore, adopts the reasoning, as supplemented by this Memorandum Opinion, and judgment of Judge Howard's FOF/COL.

In accordance with the foregoing analysis, **IT IS ORDERED** that:

(1)    Plaintiff's Objection to Findings of Fact and Conclusions of Law (Doc. # 23) be, and hereby is, **overruled**;

(2)    Plaintiff's Request for Entry of Final Order and Judgment (Doc. # 28) be, and hereby is, **denied**;

(3)    The Bankruptcy Court's Recommended Findings of Fact, Conclusions of Law and Judgment (Doc. # 22) be, and hereby is, **adopted**;

(4)    Plaintiff's Cross-Motion for Summary Judgment (Bank. Doc. # 7) be, and hereby is, **denied**;

(5)    Defendant's Motion for Summary Judgment (Bank. Doc. # 4) be, and hereby is, **granted**;

(6) Plaintiff's Complaint be, and hereby is, **dismissed with prejudice** and **stricken** from the active docket of this Court; and

(7) A Judgment in favor of Defendant will be entered concurrently herewith.

This 31st day of October, 2006.



Signed By:
David L. Bunning
United States District Judge

G:\DATA\Opinions\0-05-149-Perry (R&R MOO).wpd